UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


THOMAS L. ADAMS,

        Petitioner,

vs.                                    Case No. 3:17-cv-46-J-39JRK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____


**<u>ORDER</u>**

## I.  INTRODUCTION

Petitioner Thomas L. Adams, an inmate of the Florida penal system, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).[1]  In his petition for habeas relief, he challenges a 2014 Clay County conviction for aggravated assault on a law enforcement officer.[2]  Petitioner relies on three grounds to challenge this conviction.

_____

[1] The Court will reference the page numbers assigned by the electronic docketing system where applicable.

[2] Petitioner is also serving time in prison for two offenses for attempted sexual battery of victims less than twelve years of age.  <u>See</u> Corrections Offender Network, Florida Department of Corrections, available at <u>http://www.dc.state.fl.us/AppCommon/</u> (last visited September 26, 2018).  Petitioner is serving sentences of twenty years in prison for those offenses.  <u>Id</u>.

In response, Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 15).[3]  Petitioner filed a Reply to Respondents' Show of Cause (Doc. 16).  See Order (Doc. 4).  This cause is ripe for review.

## II.  CLAIMS

The three grounds raised in the Petition are: (1) "Clay County Sheriff's Department violated Petitioner's Fourth Amendment right by forcing a warrantless enter [sic] into Petitioner's home denying his right to due process"; (2) "[t]rial counsel was ineffective for failing to exercise for cause a challenge on a juror and agreeing to an individual voir dire violating the Petitioner's sixth amendment right to an impartial jury and trial"; and (3) "[t]rial counsel was ineffective for failing to object to the prosecutor's comment on the Petitioner's right to not testify."  Petition at 4, 6, 8.

## III.  EVIDENTIARY HEARING

This Court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  It is a petitioner's burden to establish the need for a federal evidentiary hearing, and here, Petitioner has not met this

---

[3] The Court hereinafter refers to the exhibits in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the particular document will be referenced.

burden. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060
(11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012). The
pertinent facts are fully developed in this record or the record
otherwise precludes habeas relief; therefore, the Court is able to
"adequately assess [Petitioner's] claim[s] without further factual
development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir.
2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), and no evidentiary
proceeding will be conducted.

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA)
governs a state prisoner's federal petition for habeas corpus. <u>See</u>
28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic &
Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>.
<u>denied</u>, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal
habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla.
Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017), <u>petition for
cert</u>. <u>filed</u>, (U.S. May 18, 2018) (No. 17-9015). This narrow scope
of review under AEDPA provides for habeas relief only if there are
extreme malfunctions, certainly not to be used as a means to
correct state court errors. <u>Ledford</u>, 818 F.3d at 642 (quoting
<u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

Federal courts may grant habeas relief:

> only when the adjudication of a federal
> constitutional claim "on the merits in State
> court proceedings" either "resulted in a
> decision that was contrary to, or involved an

unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States" or
"resulted in a decision that was based on an
unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding." 28 U.S.C. § 2254(d). "This
narrow evaluation is highly deferential, for a
state court's determination that a claim lacks
merit precludes federal habeas relief so long
as fairminded jurists could disagree on the
correctness of the state court's decision."
Morrow v. Warden, 886 F.3d 1138, 1146–47 (11th
Cir. 2018) (alteration adopted) (internal
quotation marks omitted) (quoting Harrington
v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770,
178 L.Ed.2d 624 (2011)). The decision of a
state court is "contrary to" federal law only
if it "contradicts the United States Supreme
Court on a settled question of law or holds
differently than did that Court on a set of
materially indistinguishable facts." Cummings
v. Sec'y for Dep't of Corr., 588 F.3d 1331,
1355 (11th Cir. 2009) (citation and internal
quotation marks omitted). The decision of a
state court "involves an unreasonable
application of federal law if it identifies
the correct governing legal principle as
articulated by the United States Supreme
Court, but unreasonably applies that principle
to the facts of the petitioner's case,
unreasonably extends the principle to a new
context where it should not apply, or
unreasonably refuses to extend it to a new
context where it should apply." Id. (citation
and internal quotation marks omitted). "The
question ... is not whether a federal court
believes the state court's determination was
correct but whether that determination was
unreasonable—a substantially higher
threshold." Id. (citation and internal
quotation marks omitted).

Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d 1314, 1321 (11th

Cir. 2018).

"We also must presume that 'a determination of a factual issue made by a State court [is[ correct,' and the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." Morrow v. Warden, 886 F.3d 1138, 1147 (11th Cir. 2018). Additionally, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In Wilson v. Sellers, 138 S.Ct. 1188, 1194 (2018), the Supreme Court concluded there is a "look through" presumption in federal habeas law, as silence implies consent. See Kernan v. Hinojosa, 136 S.Ct. 1603, 1605-606 (2016) (per curiam) (adopting the presumption silence implies consent, but refusing to impose an irrebutable presumption). This presumption is employed when a higher state court provides no reason for its decision; however, it is just a presumption, not an absolute rule. Wilson, 138 S.Ct. at 1196. "Where there are convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." Id. at 1197.

Bearing in mind this guidance from the Supreme Court, this Court undertakes its review of Petitioner's claims. If the last

state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." Id. at 1192. But, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, for example the decision simply states affirmed or denied, a federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Id. At this stage, the federal court presumes the unexplained decision adopted the same reasoning as the lower court; however, the presumption is not irrebutable. Id. See Hinojosa, 136 S.Ct. at 1606 (strong evidence may refute the presumption). Indeed, the state may rebut the presumption by showing the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson, 138 S.Ct. at 1192.

Although the § 2254(d) standard is difficult to meet, the standard is meant to be difficult. Rimmer v. Sec'y, Fla. Dep't of Corr., 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error), cert. denied, 138 S.Ct. 2624 (2018). When applying the stringent AEDPA standard, state court decisions must be given the

benefit of the doubt. <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1107 (11th Cir. 2012) (quotation and citations omitted), <u>cert</u>. <u>denied</u>, 568 U.S. 1237 (2013).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). A counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id</u>. at 690.

In making its determination as to whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." <u>Id</u>. at 690. When analyzing a claim of ineffective assistance of counsel, "[t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011). And importantly, with regard to the establishment of prejudice requirement, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

- 7 -

Of note, some conceivable effect on the outcome does not constitute a reasonable probability.  Id. at 693.

Finally, in order to prevail on a claim of ineffective assistance of counsel, both parts of the Strickland test must be satisfied.  Bester v. Warden, Att'y Gen. of the State of Ala., 836 F.3d 1331, 1337 (11th Cir. 2016) (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)), cert. denied, 137 S.Ct. 819 (2017).  Indeed, failure to demonstrate either prong is fatal, making it unnecessary to consider the other.  Id

## VI.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

The first ground of the Petition is:  "Clay County Sheriff's Department violated Petitioner's Fourth Amendment right by forcing a warrantless enter [sic] into Petitioner's home denying his right to due process[.]"  Petition at 4.  Respondents raise the issue of exhaustion.  Response at 14.  They assert Petitioner failed to exhaust his Fourth Amendment claim that his rights were violated by law enforcement's warrantless entry into Petitioner's home.  Id.

Since the question of exhaustion has been raised, this Court must ask whether Petitioner's claims were fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in <u>Baldwin</u> "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. <u>McNair</u>, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." <u>Kelley</u>, 377 F.3d at 1343–44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351–52 (11th Cir. 2012), <u>cert</u>. <u>denied</u>, 568 U.S. 1104 (2013).

The doctrine of procedural default requires the following:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct. 2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal

review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

The Supreme Court has imparted that a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). If cause is

- 10 -

established, a petitioner is required to demonstrate prejudice. In order to demonstrate prejudice, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908. More particularly, to demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).

Since Petitioner raises a Fourth Amendment claim in ground one, the Court will initially ask whether the Fourth Amendment claim is barred. Of import, if the state affords a defendant a full and fair opportunity to litigate the validity of a search or seizure, "a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Hearn v. Florida, 326 F. App'x 519, 521 (11th Cir. 2009) (per curiam) (quoting Stone v. Powell, 428 U.S. 465, 494 (1976)). The courts have interpreted the phrase "opportunity for full and fair litigation" to mean just that: an opportunity.[4] Lawhorn v. Allen, 519 F.3d 1272, 1287 (11th Cir. 2008) (citation omitted), cert. denied, 562 U.S. 907 (2010).

---

[4] An opportunity in this context has been described as one evidentiary hearing in the trial court and the availability of a meaningful appeal. Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000) (quotation and citation omitted), cert. denied, 531 U.S. 1128 (2001).

"Therefore, if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair' . . ., then <u>Stone v. Powell</u> precludes federal habeas corpus consideration of those issues **whether or not the defendant avails himself of that opportunity**." <u>Caver v. State of Ala.</u>, 577 F.2d 1188, 1193 (5th Cir. 1978) (emphasis added).[5]

Ground one is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue in the state courts but did not avail himself of that opportunity. The defense could have filed a motion to suppress in the state circuit court, but failed to do. <u>See</u> Ex. A, Index, Case No. 2013-CF-000839. If Petitioner had availed himself of the opportunity, the trial court would have had the occasion to review the motion, conduct an evidentiary hearing, and make explicit findings on matters essential to the Fourth Amendment claim. Furthermore, Petitioner could have taken the matter up on direct appeal to the 1st DCA. Upon review, no Fourth Amendment claim was raised before the trial court or on direct appeal. Ex. D; Ex. E; Ex. F. Thus, review of this claim is barred pursuant to <u>Stone</u> and its progeny.

---

[5] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Apparently, Petitioner is contending that he exhausted this claim by raising it in his Rule 3.850 motion. This Court is not convinced by this argument. There are two prerequisites to a federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

After a thorough review of the record before the Court, the Court concludes Petitioner failed to properly exhaust his Fourth Amendment claim in the state courts because he did not present the claim in a procedurally correct manner. Since he did not present his Fourth Amendment claim to the state courts in a procedurally correct manner, the ground is also procedurally defaulted. Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The

fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). With respect to this unexhausted ground, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds ground one barred. Alternatively, the claim is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, ground one is due to be denied.

In the alternative, the Court considers the claim as presented in the fifth claim of the Rule 3.850 motion: "In accordance with Fla. R. Crim. Pro. Rule 3.850(a)91), the Defendant's Judgement [sic] was entered in violation of the U.S. Constitution[.]" Ex. H at 19. The claim is vague, broad, and non-specific. All of the other claims in the Rule 3.850 motion concern allegations of ineffective assistance of trial counsel, except for claim eight, which contains a cumulative error claim. Ex. H at 7-28.

In the supporting facts for the fifth claim of the post conviction motion, Petitioner states it became apparent after witness testimony at trial, there had been a Fourth Amendment violation. <u>Id</u>. at 19. He submits there were no exigent

circumstances justifying the forceful, unlawful entry into his home, and he describes police brutality without adequate foundation or reason. Id.

The trial court addressed the fifth claim as an insufficiency of the evidence claim and opined:

> Defendant argues his judgment was entered in violation of the United States Constitution. Essentially, Defendant argues there was insufficient evidence for the jury to convict him.
>
> Claims of insufficient evidence are not cognizable in a Rule 3.850 motion because such claims should have been raised on direct appeal. See Fla. R. Crim. P. 3.850(c) (2015) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly, preserved, on direct appeal of the judgment and sentence."); Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) ("Claims of insufficient evidence have long been held to be procedurally barred in collateral proceedings."). Therefore the Court finds that Defendant is not entitled to relief on Ground Five.

Ex. H at 39-40.

Thus, the circuit court found the claim procedurally defaulted. The First District Court of Appeal (1st DCA) per curiam affirmed. Ex. L. The mandate issued on November 29, 2016. Id.

As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, ground one is due to be denied as procedurally barred.

Finally, and alternatively, the Fourth Amendment claim is due to be denied. As noted by Respondents, pursuant to Fla. Stat. § 39.401(1), law enforcement officers and authorized agents of the Florida Department of Children and Family Services (DCF) effected an emergency removal of Petitioner's grandson without Petitioner's permission and without a court order.

> Section 39.401(1) governs the state's emergency removal of children who are believed to be in danger of child abuse. It provides in pertinent part:
>
> (1) A child may only be taken into custody:
>
> ...
>
> (b) By a law enforcement officer, or an authorized agent of the [DCF], if the officer or authorized agent has probable cause to support a finding:
>
> 1. That the child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment[.]
>
> Fla. Stat. § 39.401(1).
>
> Consistent with § 39.401(1), DCF's policy is to remove a child from a parent or legal guardian without prior judicial authorization when there is probable cause to believe the child has been abused or is in imminent danger of abuse.

Doe v. Kearney, 329 F.3d 1286, 1291 (11th Cir.) (footnote omitted), cert. denied, 540 U.S. 947 (2003).

Kathryn Williams, of DCF, testified that the DCF staff attorney concluded there was probable cause that the child, Petitioner's grandson, was at risk and needed to be removed from the home on an exigent basis. Ex. B at 248-51. Ms. Williams testified that because there was an immediate concern for the child's safety, DCF had the ability to remove the child and go to court within 24 hours to obtain a signed court order by a judge. Id. at 249. Ms. Williams further attested that, in this case, a court order was obtained within the 24-hour period following the child's removal from the home. Id. at 249-50. She said, DCF presented "the same evidence" to the judge, and the judge determined there was probable cause to remove the child. Id. at 250. Ms. Williams also testified that DCF had reason to believe there might be a threat of violence at the home, and DCF sought the aid of the Clay County Sheriff's Office in removing the child from the home. Id. at 251.

As expected, the officers from the Clay County Sheriff's Office were met with violence when they confronted Petitioner and advised him that DCF was present to remove the child from the home. Lance Kraemer, a sergeant who was dressed in his uniform at the time of the incident, testified that when the lieutenant handed Petitioner his business card at the door of Petitioner's home and advised that DCF was present and prepared to remove the child, Petitioner became angry and said they would not be removing the child from the home. Ex. B at 274-75. Petitioner then said,

"[d]on't make me do anything violent[,]" and proceeded to reach behind his back and pull out a pistol. <u>Id</u>. at 275. A struggle for the gun ensued between Petitioner and the two officers, resulting in the officers falling into the residence through the front door. <u>Id</u>. at 275-76. The struggle continued into the dining room, and the officers eventually handcuffed Petitioner. <u>Id</u>. at 278. The jury returned a verdict finding Petitioner guilty of aggravated assault on a law enforcement officer and Petitioner possessed a firearm during the commission of the crime. Ex. C at 280; Ex. H at 45-46.

Although "parents have a constitutionally protected liberty interest in the care, custody and management of their children[,]" the state also has "a profound interest in the welfare of the child" and "may constitutionally remove children threatened with imminent harm when it is justified by emergency circumstances." <u>Kearney</u>, 329 F.3d at 1293 (citation omitted). To do so, the state must have probable cause to believe the child is threatened with imminent harm, and in this case, the DCF authorities so found prior to attempting removal of the child, although they did so without judicial authorization, as allowed pursuant to Chapter 39. As noted by Respondents, "Petitioner's act of pulling a gun on the law enforcement officers, who were properly executing their legal duty, changed the encounter from a Chapter 39 seizure of a child into a seizure of Petitioner due to the exigent circumstances." Response

at 22.  As such, Petitioner's Fourth Amendment rights were not violated.  Ground one is due to be denied.

## B.  Ground Two

In his second ground, Petitioner raises the following claim: "[t]rial counsel was ineffective for failing to exercise for cause a challenge on a juror and agreeing to an individual voir dire violating the Petitioner's sixth amendment right to an impartial jury and trial."  Petition at 6.  The record shows Petitioner was represented by retained counsel, Theodore F. Zentner, Esquire.  Ex. A at 142.

The trial court, before addressing Petitioner's claims of ineffective assistance of counsel, set forth the two-pronged Strickland standard of review.  Ex. H at 34-35.  The court reviewed Petitioner's claim that counsel was ineffective for failing to exercise a challenge on a particular juror and failing to agree to an individual voir dire of that juror.  Ex. H at 37.  Applying the Strickland standard, the trial court found the claim without merit, noting that a post conviction motion cannot be used to go behind those representations made by the defendant to the trial court. Id. (citation omitted).  In this regard, the trial court recognized that it may summarily reject claims that are clearly refuted by the representations made by a defendant at trial.   Id.

The court explained its rejection of Petitioner's claim:

> Here, the record reflects that Defendant
> agreed to allow the challenged juror to remain
> on the jury and agreed to all the jurors

selected for his jury trial.  The transcript of the jury selection provides, in relevant part,

> THE COURT: If you're asking me for extra preemptories [sic], I'll consider that request.  Are you asking for extra preemptories [sic]?

> MR. ZENTNER: No -- let me just confer with my client.

> THE COURT: Yes, sir.

> (Attorney/Client privileged communication after which the following occurred:)

> MR. ZENTNER: Your Honor, we will accept Mr. Miranda.

> THE COURT: All right.  Before we bring the Jury back in, Mr. Adams, you of course have been present through the entire proceedings up to this point.  Were there any questions - are you satisfied with your attorney's performance up to this point?

> THE DEFENDANT: Yes.

> THE COURT: Were there any questions that you wanted him to ask the jurors during that phase of the trial that he didn't ask?

> THE DEFENDANT: No, sir.

> THE COURT: And you've been able to communicate with Mr. Zentner during the selection process here, and you are in agreement with the choices that have been made to this point?

> THE DEFENDANT: Yes, sir.

(Ex. E at 74-75.).

> Defendant cannot go behind his
> representations made before the Court.
> Therefore, the Court finds that Defendant has
> failed to demonstrate counsel's performance
> was deficient. Defendant is not entitled to
> relief on Ground Three.

Ex. H at 37-38.

As noted previously, both parts of the <u>Strickland</u> test must be satisfied, and the trial court found Petitioner failed to satisfy one of the prongs of the <u>Strickland</u> test. Petitioner exhausted his state court remedies by appealing the denial of his Rule 3.850 motion. Ex. I at 366-67; Ex. J; Ex. K. On November 3, 2016, the 1st DCA affirmed the decision of the trial court without opinion. Ex. L. The mandate issued on November 29, 2016. <u>Id</u>.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in <u>Strickland</u>, 466 U.S. at 689. Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based

on an unreasonable determination of the facts.  As such, ground two is due to be denied.

The record shows the following.  During voir dire, Petitioner's counsel asked if any of the individuals of the venire were "aware of any of the facts or the incident that gave rise to these charges which occurred about 16 months ago."  Ex. A at 195-96.  One prospective juror said he reads a lot of papers, and he may have read about it, but he believed he saw Petitioner's picture.  <u>Id</u>. at 196.  When asked by counsel if this would have an impact on his ability to weigh the evidence and be fair and impartial, the juror responded that he could not remember any precise details.  <u>Id</u>. at 196-97.  The juror said: "I don't know if I should say what I think I remember."  <u>Id</u>. at 197.  Counsel told the prospective juror not to reveal the content, but asked him if he remembered what he had read.  <u>Id</u>.  The juror said, "[i]f it's the same case, yes."  <u>Id</u>.  Again, counsel asked if it would affect his ability to be fair and impartial, and the juror responded in the negative.  <u>Id</u>.  He stated he could not remember the date or time of the article.  <u>Id</u>.

Towards the conclusion of jury selection, this juror, Mr. Ceron-Miranda, was in a position to be the alternate juror.  Ex. B at 210.  At first, defense counsel said Mr. Ceron-Miranda was acceptable, but then withdrew this acceptance.  <u>Id</u>.  Counsel stated he had some concern for cause because the potential juror had mentioned reading an article about the case.  <u>Id</u>. at 210-11.

Counsel explained his reason for concern, stating he feared that, as the trial progressed, Mr. Ceron-Miranda may remember more details, possibly suffer from confusion, and perhaps exhibit difficulty differentiating between what he read and what he heard. Id. at 211. The court asked whether Petitioner's counsel was asking for the court to do an individual voir dire, and the court asked for comment from the prosecutor. Id. The prosecutor said he did not believe there was enough for a cause challenge, but had no objection to individual questioning. Id. at 212. The court said it did not think there was enough for a challenge for cause, but again asked Petitioner's counsel if he was requesting an individual voir dire. Id. Defense counsel said no, he did not want an individual voir dire because Mr. Ceron-Miranda did not remember enough at this point in the proceeding. Id.

Defense counsel inquired as to whether he had any more peremptory challenges; however, he had used the last peremptory challenge on Mr. Kleingarn. Id. at 213. The court asked whether counsel wished to withdraw that challenge and use it on Ceron-Miranda. Id. Defense counsel declined, and the court inquired as to whether counsel was asking for extra peremptory challenges. Id. at 214. At this point, defense counsel asked to confer with his client, and the court granted counsel leave to do so. Id. After conferral, the defense accepted Mr. Ceron-Miranda. Id.

The record demonstrates that defense counsel exercised a challenge for cause, but the court did not find there was enough to

support a challenge for cause. The reasonableness of counsel's actions are underscored by his thoughtful approach of challenging the alternate juror for cause, considering whether to ask for individual voir dire, contemplating whether to ask for an extra peremptory challenge, and finally, conferring with his client before accepting Mr. Ceron-Miranda. The record shows defense counsel believed individual voir dire would have been fruitless based on Mr. Ceron-Miranda's vague memory of the article. What defense counsel feared was, as the trial progressed, Mr. Ceron-Miranda's memory may improve as he heard details of the incident from witnesses, which might cause him some confusion when he attempted to differentiate between what he had read and what he heard. Although defense counsel pondered the question of whether to ask for an extra peremptory challenge, after conferring with his client, the defense accepted Mr. Ceron-Miranda.

Here, counsel was not ineffective for failing to attempt to exercise a challenge for cause, because he did try that challenge, but the court found it lacking. Counsel's performance was not deficient for deciding not to ask for individual voir dire; counsel considered this option and decided not to pursue it as the juror's memory of the article was too hazy. When considering whether to ask for an extra peremptory challenge, counsel conferred with his client and the defense decided it best to accept Mr. Ceron-Miranda as the alternate. The record supports the reasonableness of

counsel's decision and belies any basis for an ineffective assistance of counsel claim.

## C. Ground Three

In his final ground, Petitioner claims "[t]rial counsel was ineffective for failing to object to the prosecutor's comment on the Petitioner's right to not testify." Petition at 8. The trial record shows the following. During closing argument, defense counsel argued:

> [Petitioner] had no choice. He couldn't sit there or stand there and debate with them: What have you done, you know. Why are you doing this to him. Can't we sit down over a cup of coffee and talk about this? Maybe we could work something out. Maybe there's been a misunderstanding. Probably was a misunderstanding about the violence they were accusing him of.

Ex. B at 399.

Thereafter, the court allowed the state a brief rebuttal. Ex. C at 401. In response to the defense's closing argument, the prosecutor said:

> Yeah, a earlier later [sic] now at trial, there's this mention of: Well, if he had just – – they had just talked to him. But what did he do that night? The uncontradicted testimony, the only testimony is Sergeant Kramer and Lieutenant Burke of what the Defendant did. And what did the Defendant do? The Defendant said absolutely unequivocally: You're not taking the boy, It wasn't: Well, why are you taking the boy? What are my options? Can we talk about it? Is there something else we could do? It was: You're not taking the boy.

. . . .

> Did he ask questions?  Did he want to see the
> – - no.  He didn't say: Can I see the court
> order.  He said, "Don't make me be violent,"
> and pulled the gun.  He didn't want to talk
> that night.  By his own actions and his own
> words **and don't now, a year later, let him
> come in and say: Well, I wanted to talk that
> night.**  Judge him on his actions that night.

Ex. C at 409-10 (emphasis added).

Petitioner exhausted this ground by raising it in his post conviction motion.  The trial court denied the Rule 3.850 motion, and the 1st DCA affirmed per curiam.

Defense counsel did not object to the above, highlighted statement.  In its decision, the trial court found the comment, taken "in the context in which it was made[,] in no way is a comment on Defendant's right to remain silent."  Ex. H at 39. While recognizing that commenting on a defendant's exercise of his right to remain silent constitutes serious error, the trial court held defense counsel was not deficient for failing to object to the prosecutor's comment because it did not amount to a comment on silence nor was it fairly susceptible of being interpreted as a comment on silence.  Id.

With respect to this claim, the trial court found Petitioner failed to satisfy the performance prong of Strickland and denied post conviction relief.  The 1st DCA affirmed the decision of the trial court.  The 1st DCA did not give reasons for its summary affirmance.  Under Wilson, this Court assumes that the 1st DCA

adopted the reasoning of the trial court. The state has not attempted to rebut this presumption. Wilson, 138 S.Ct. at 1192. The state court did not unreasonably apply Strickland; therefore, AEDPA deference is warranted. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground three.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE.**

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[6] Because this Court has determined that a certificate of appealability is not

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of October, 2018.



_____
BRIAN J. DAVIS
United States District Judge



sa 10/1
c:
Thomas L. Adams
Counsel of Record